UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH NARCISSE, *et al.*, | : | Case Nos. 3:07-cv-253 |
| | : | 3:10-cv-079 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | Magistrate Judge Michael R. Merz |
| | : | |
| SAMUEL A. BARHORST, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY DENYING PLAINTIFF DESMOND GUILLORY'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 60)

This case is before the Court on the Plaintiff Desmond Guillory's ("Guillory")

Motion for Judgment on the Pleadings (Doc. 60) directed against the Intervening

Complaint of Morrow, Morrow, Ryan and Bassett ("MMRB"). MMRB filed a

Memorandum in Opposition. (Doc. 61). Thereafter, Guillory filed a Reply. (Doc. 63).

Accordingly, Plaintiff's Motion is ripe for disposition.

### I. FACTS

The standard for determining a motion for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c) is the same as that for determining a Rule 12(b)(6) motion to

dismiss. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). As a result, this Court

"must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais & Co.,

Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). In addition, a court must construe all allegations in

the light most favorable to the plaintiff. *Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th

Cir. 1996).

On July 25, 2005, Guillory was injured in an automobile accident in Shelby

County, Ohio. (Doc. 7, in Case No. 3:10-cv-79). At the time of the accident, Guillory

was a "passenger in a 2000 International semi-truck" driven by co-Plaintiff, Joseph

Narcisse. (Doc. 1, in Case No. 3:10-cv-79). The accident at issue involved a collision

between the semi-truck driven by Narcisse and a pick-up truck driven by Defendant

Samuel Barhorst. (*Id.*)

On January 20, 2006, Guillory's mother, Phyllis Narcisse, contracted with MMRB,

a law firm in Louisiana, to represent Guillory with regard to his claims against Barhorst

arising from the accident. (*Id.*) Among the terms and conditions set forth in that contract,

are the following:

> (1)  Attorney [MMRB] is to receive as compensation for his services 33
>      1/3 percent of whatever gross amount is collected;
>
> . . .
>
> (3)  Client will be responsible for expenses from his share of any
>      recovery;
>
> (4)  If money is borrowed for living expenses or for expenses directly
>      related to the case, as allowed for by law, the Client grants to the
>      Attorney and any lending institution financing the case an
>      Assignment in his case to pay off those loans and interest;

(*Id.*)

Pursuant to the terms of the contract, MMRB advanced $21,110.66 in living

expenses and expenses to Phyllis Narcisse, purportedly on behalf of Guillory. (*Id.*)

Attached to the Complaint are seven separate promissory notes evidencing loans made by

Washington State Bank to Phyllis Narcisse on behalf of Desmond Guillory. (*Id.*) Those

notes show loans in the amounts of $983.72, $15,787.53, $1,081.33, $561.79, $1,075.27,

$558.75, $1,062.27, all at an interest rate of 11.5%, and all purportedly signed by "Phyllis

Narcisse (on behalf of Desmond Guillory)[.]" (*Id.*)

MMRB is the last holder for value of the promissory notes. (*Id.*) Following a demand for payment of the advances made to Guillory, and Guillory's default on those notes, MMRB filed a civil action against Guillory seeking the balance due under the notes. (*Id.*) A Louisiana court ultimately issued a judgment in favor of MMRB and against Phyllis Narcisse in the amount of $25,408.38, with interest, costs and $6,000 in attorney's fees. (*Id.*)

In March 2010, Guillory filed an action against Barhorst in this Court asserting claims arising from the July 2005 accident. Thereafter, MMRB intervened seeking: (1) the money owed on the judgment issued in Louisiana relating to the living expenses advanced to Guillory; (2) the amount of litigation expenses advanced to Guillory by MMRB; and (3) a quantum meruit fees award for the work performed representing Guillory in Louisiana. In responses, and pursuant to Fed. R. Civ. P. 12(c), Guillory now seeks judgment on the pleadings in his favor relating to the claims asserted by MMRB.

## II. STANDARD OF REVIEW

The standard for reviewing a Rule 12(c) motion is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). In determining "a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Streater v. Cox*, 336 Fed. Appx. 470, 474 (6th Cir. 2009) (citing *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir.2008)).

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555).  In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, in order to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949.  A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. Rule Civ. Proc. 8(a)(2)).

## III. ANALYSIS

### A.    Existence of a Contract

Initially, Guillory disputes the existence of a valid contractual relationship between him and MMRB under Louisiana law.[1]  Guillory argues that because he was a minor at the time the contract was executed, and because he did not sign the agreement, he cannot be bound by the contract with MMRB.

_____

[1]  The parties do not dispute that Louisiana law applies to the issues presented in Guillory's motion.

There is no dispute that Guillory was a minor at the time the contract was purportedly executed, and there is no dispute that Guillory never signed the contract. Instead, MMRB's purported theory, as outlined in the Intervening Complaint, is that Guillory "entered into [the] contract through his mother Phyllis Narcisse[.]" (Doc. 1). Thus, the issue is whether the Intervening Complaint sets forth sufficient facts showing the existence of a valid contract between MMRB and Guillory.

Under Louisiana law "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. "The four elements of a valid contract are: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *La Bo J Partnership v. Louisiana Lottery Corp.*, 6 So.3d 191, 194 (La. App. 2009) (citing *Provenza v. Central & Southwest Services, Inc.*, 775 So.2d 84, 85 (La. App. 2000). In Louisiana, "unemancipated minors" do not have the capacity to contract, and "[a] contract by an unemancipated minor may be rescinded on grounds of incapacity except when made for the purpose of providing the minor with something necessary for his support or education, or for a purpose related to his business." La. Civ. Code arts. 1293, 1918.

Nevertheless, the Supreme Court of Louisiana has concluded that a contract for legal representation made by a natural parent of a minor for a minor's personal injury claims is legally binding against the minor if it is reasonable. *Southern Shipbuilding Corp. v. Richardson*, 372 So.2d 1188, 1190-91 (La. 1979). Accordingly, MMRB has plausibly plead the existence of a valid contract for legal services between Guillory and MMRB because Phyllis Narcisse was permitted to bind Guillory to a contract for legal representation at a reasonable rate. And the Court further concludes that the contractual

provisions regarding the repayment of reasonable litigation expenses is binding for the same reasoning set forth in *Southern Shipbuilding*. Accordingly, Guillory's Motion is denied as to MMRB's third and fourth claims set forth in the Intervenor's Complaint (*i.e.*, claims to recover litigation expenses and to recover a quantum meruit fee award).

The Court concludes, however, that *Southern Shipbuilding* does not address Guillory's potential liability on promissory notes or the assignment of Guillory's personal injury claims to the extent of living expense loans, and does not address whether the natural parent of a minor can borrow money on the minor's behalf and/or assign portions of the minor's legal claims to secure such loans. Guillory tangentially addresses these issues in his Reply Memorandum, but provides no legal support or detailed argument. (Doc. 63).[2]

Nevertheless, it appears that in certain circumstances and under certain conditions, a parent or a tutor can borrow money on behalf of a minor and pledge the minor's property under Louisiana law. *See Deville v. The Fed. Sav. Bank of Evangeline Parish*, 635 So.2d 195, 197-98 (La. 1994) (finding that the person charged with the administration of a minor's affairs, *i.e.* a tutor or tutrix, can "borrow money for the purpose of preserving or administering the minor's property, of paying debts, or for the care, maintenance, training or education of the minor" and can further "pledge the minor's property" with "prior express authorization" of the court) (citing La. Civ. Code

---

[2] Guillory argues that "MMRB has presented no law on Louisiana agency principles regarding a minor and his parent, and no law on whether a party can sue a minor directly for separate promissory notes on which that minor's parent has become bound." (Doc. 63). But Guillory himself cites no law to support the contention that "[t]he notion that Mr. Guillory can be held liable for endless separate promissory notes between his mother and Washington State Bank simply because his mother signed a fee agreement with MMRB above the underscored language of 'On behalf of Desmond Guillory,' goes against Louisiana law and public policy."

-6-

arts. 4267,[3] 4271, 3148); *see also* La. Civ. Code Proc. art. 4501.[4]

Here, while the factual allegations regarding Phyllis Narcisse's ability to bind Guillory to the loan and assignment provisions of the contract are thin, *i.e.*, the only factual allegation regarding Phyllis Narcisse's authority to contractually bind Guillory is the factual assertion that she is Guillory's mother and signed the documents on Guillory's behalf, the Court finds that MMRB has adequately plead the existence of a valid contract between Guillory and MMRB sufficient to avoid dismissal via a Rule 12(c) motion.

### B.   Res Judicata

Next, Guillory argues that res judicata bars MMRB's claims as a result of a judgment entered by a Louisiana court against Phyllis Narcisse arising from her liability on the promissory notes.  In Louisiana, the doctrine of res judicata is codified in La. R.S. 13:4231, which provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

---

[3] La. Code Civ. Proc. art.  4267 provides that "[w]hen it appears to the best interest of the minor, and after compliance with Article 4271, the court may authorize a tutor to borrow money for the purpose of preserving or administering the property, of paying debts, for expenditures in the regular course of a business conducted in accordance with Article 4266, or for the care, maintenance, training, or education of the minor. As security for such a loan, the court may authorize the tutor to mortgage or pledge property of the minor upon such terms and conditions as it may direct. Before authorizing a loan, the court may require the tutor to furnish additional security in an amount fixed by the court."

[4] La. Cod Civ. Proc. art. 4501 provides that actions maybe taken by natural parents "not divorced or judicially separated . . . in the same manner and by pursuing the same forms as in case of a minor represented by a tutor[.]"

Res judicata under the statute applies upon the satisfaction of the following elements:

> (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation."

*Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003).

Here, the main dispute regarding the application of res judicata from the Court's perspective is whether the Louisiana case involved "the same parties." The same party requirement "does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacities in both suits." *Id*. at 1054.

In this case, at this stage of the litigation and based solely on the factual allegations set forth in the pleadings and the documents attached thereto, it cannot be said that the same party requirement is met. It appears that the judgment issued in the Louisiana case was issued against Phyllis Narcisse solely in her individual capacity based on some theory of individual liability on the promissory notes, not in a representative capacity on behalf of Guillory. In other words, additional information outside the pleadings is required for Guillory to show the applicability of res judicata. Accordingly, the Court cannot now conclude that res judicata bars MMRB's claims against Guillory.

## IV. CONCLUSION

Based on the foregoing, Plaintiff Guillory's Motion for Judgment on the Pleadings (Doc. 60) is **DENIED**.

**IT IS SO ORDERED.**

Date: _____8/18/11_____

_____Timothy S. Black_____
Timothy S. Black
United States District Judge